## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 10-32367-jps |
| JOHN BARRY COLVIN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| JETS R US, LLC and | ) | |
| RAYMOND O. BOYD, | ) | Adversary Proceeding |
| | ) | No. 11-03035-jps |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN BARRY COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

### AMENDED AND RESTATED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTION TO DISCHARGE

COMES NOW Creditors Jets R Us LLC and Raymond O. Boyd, by and through his undersigned legal counsel, and states this Amended and Restated Complaint to Determine Dischargeability of Debt and Objection to Discharge pursuant to 11 U.S.C. §§ 523 and 727 and Bankruptcy Rule 4004(d), 7001(4) and 7001(6) as follows:

### INTRODUCTION

1.

Debtor John Barry Colvin ("Colvin") has engaged in a pattern of fraud and deceit that mandates dismissal of his bankruptcy petition without discharge, or in the alternative, that his debts to plaintiffs Jets R Us LLC ("Jets R Us") and Raymond Boyd ("Boyd") (collectively referred to as "Plaintiffs") be deemed nondischargeable.

957347-1

2.

Colvin's debts arise out of substantial scams perpetrated against his creditors, and his filing for bankruptcy is a result of an imminent threat of incarceration for contempt by a state court judge. Notably, Colvin previously filed a bankruptcy petition on behalf of his company, U.S. Jets, Inc. ("U.S. Jets") after violating a state court order and facing contempt.

3.

On March 6, 2009, the State Court of Clarke County issued a contempt order against Colvin and U.S. Jets, a company 100% owned by Colvin. The contempt order was the culmination of Colvin's willful and repeated failure to provide certain flight log books, maintenance records and FAA documents related to an aircraft owned by Jets R Us (the "Aircraft Records").

4.

Colvin's willful refusal to provide such documents has resulted in hundreds of thousands of dollars of damage to Plaintiffs.

5.

In addition, Colvin has concealed or sold assets and goods belonging to Plaintiffs with a malicious intent to injure them.

6.

As set forth below, Colvin is not eligible for discharge as a debtor in this bankruptcy action, pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727(a)(4)(A), and 727(a)(7). Furthermore, Colvin's debts to Plaintiffs are not dischargeable in bankruptcy pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6).

**COLVIN'S MISREPRESENTATIONS CONCERNING THE AIRCRAFT**

7.

Plaintiffs' relationship with Colvin began in 2006 when Jets R Us (a company owned by Boyd) purchased a 1979 Lear Jet 35A (the "Plane") from U.S. Jets (a company 100% owned by Colvin).

8.

Contemporaneously with the purchase of the Plane, Jets R Us leased the Plane to U.S. Jets, and Colvin guaranteed that lease. The lease contemplated that U.S. Jets would transport fare-paying passengers throughout the United States.

9.

Pursuant to the lease, U.S. Jets represented, among other things, (a) that at all times, the Plane would be insured with third party aircraft liability insurance, passenger legal liability insurance, property damage liability insurance and medical expense insurance and (b) that it would operate the Plane strictly in accordance with 14 C.F.R. Parts 91 and 135 (typically referred to as a "Part 135 Certificate"). As an experienced pilot and charter company owner, Colvin knew that these representations were essential for any lessor of an aircraft.

10.

In addition, because U.S. Jets was responsible for the maintenance and operation of the Plane, U.S. Jets and/or Colvin had sole possession and control of the maintenance records and log books for the Plane (the "Aircraft Records").

11.

The insurance requirement was critical, as flying passengers without appropriate insurance coverage (as required in the lease) would expose Plaintiffs to incredible risk and exposure.

12.

Having a Part 135 Certificate was also critical, as a Part 135 Certificate is generally required to transport fare-paying passengers. Obtaining a Part 135 Certificate is a rigorous process and requires the charter entity, the aircraft and its pilots to meet high standards of training and demonstrated levels of operational proficiency.

13.

On or about March 1, 2007, Plaintiffs discovered that U.S. Jets was not insured to transport fare-paying passengers and, in fact, did not even have a Part 135 Certificate from the FAA. U.S. Jets was merely insured for Part 91 operations (i.e. non-charter operations). Instead, U.S. Jets had improperly used the Part 135 Certificate number belonging to another charter company without its knowledge.

14.

Despite not having insurance or a Part 135 Certificate, U.S. Jets (under the direction of Colvin) used and/or permitted the Plane to transport fare-paying passengers to Turks and Caicos Island on March 4, 2007 and to other destinations.

15.

Upon information and belief, U.S. Jets and Colvin did not carry the appropriate insurance or the Part 135 Certificate in part because (a) insurance for Part 135 Certificate flights is much

more expensive than non-Part 135 Certificate insurance and (b) the Part 135 Certificate is expensive to obtain and maintain. In, fact U. S. Jets and Colvin had previously surrendered their Part 135 Certificate under a settlement agreement with the FAA stemming from serious violations of FAA regulations. U. S. Jets and Colvin were prohibited by the agreement from holding any certificate with the FAA.

16.

Because U.S. Jets (under the direction of Colvin) represented to Plaintiffs that the Plane was properly insured and that U.S. Jets maintained a Part 135 Certificate and Plaintiffs justifiably and reasonably relied on such representations, Plaintiffs were comfortable doing business with U.S. Jets and Colvin pursuant to their lease. However, had U.S. Jets and Colvin not misrepresented these critical facts, Plaintiffs would never have exposed themselves to potentially millions of dollars of liability and never would have entered into the lease with U.S. Jets. In addition, Plaintiffs never would have purchased the Plane from U.S. Jets had they known about the misrepresentations.

**COLVIN'S FALSE TESTIMONY AND WILLFUL DESTRUCTION, SALE AND CONCEALMENT OF PLAINTIFFS' COLLATERAL**

*Colvin's First Refusal to Comply with State Court Orders*

17.

On May 7, 2007, Plaintiffs sued Colvin and U.S. Jets after they discovered these misrepresentations and other bad acts, including that Colvin had inserted a revised page in the lease and forged Boyd's initials to the page in connection with obtaining insurance for the Plane for Part 91 operations.

957347-1

18.

These lawsuits sought recovery and a writ of possession for Plaintiffs' chattel, which included an aircraft, an aircraft hanger, furniture, certain tools and equipment and the Aircraft Records.

19.

The Aircraft Records were and are particularly valuable to Plaintiffs. An aircraft is not legally flyable without proof of airworthiness for its intended use. Such airworthiness is proven in large part by the information contained in the aircraft's maintenance records and flight logs. Without such records and logs, an aircraft is reduced to only salvage value.

20.

On May 1, 2008, the trial court ordered U.S. Jets to produce Plaintiffs' collateral for inspection. A true and correct copy of the May 1, 2008 Order is attached hereto as Exhibit A.

21.

On the day of the court-ordered inspection, Plaintiffs and their counsel arrived at Colvin's office and the aircraft hanger to find that it was nearly empty. All of the desks, chairs, office equipment and other furnishings had been removed. In addition, the tools and equipment used at the aircraft hanger to operate, maintain, repair and move aircraft had been removed. Finally, the Aircraft Records were missing.

22.

On June 25, 2008, the state court held a hearing on the missing collateral. With respect to a missing ground power unit and hydraulic cart, Colvin testified that U.S. Jets leased said equipment and that it had been returned to the lessor. Colvin also testified that all of Plaintiffs'

collateral had been produced.  With respect to the other missing tools and equipment, Colvin

testified that he, rather than U.S. Jets, owned them and that they were not Plaintiffs' collateral.

With respect to the Aircraft Records, Colvin testified that they had been destroyed sometime in

2007.

23.

Colvin's testimony was false.  Specifically, instead of returning the "leased' equipment as

Colvin testified, U.S. Jets sold the ground power unit, the hydraulic cart a wheel assemblies for a

Lear Jet and deposited the funds in his personal account.  In addition, the other missing tools and

equipment belonged to U.S. Jets, not Colvin personally.  Finally, the Aircraft Records had not

been destroyed (or if they had been, such destruction was for the willful intent to injure

Plaintiffs).

*Colvin's Second Refusal to Comply with State Court Orders*

24.

On June 25, 2008, the state court found that Colvin was in possession of "certain

documents and equipment which were not produced" and ordered U.S. Jets and Colvin (i) not to

destroy or remove any collateral and (ii) provide access to such collateral for inspection.  The

state court further cautioned U.S. Jets and Colvin that failure to comply would subject Colvin to

incarceration for contempt.  A true and correct copy of the June 25, 2008 Order is attached

hereto as Exhibit B.

25.

Neither Colvin nor U.S. Jets has complied with the June 25, 2008 Order.  Just days after

entry of that Order, U.S. Jets filed a Chapter 11 bankruptcy petition in the Middle District of

957347-1

Georgia (case no. 08-30797-rfh).  That case was eventually converted to Chapter 7, and the state court claims were remanded to Clarke County.

*Conflicting Testimony Regarding Aircraft Records*

26.

At the 341 meeting of creditors in the U.S. Jets Chapter 11 case, Colvin repeated his earlier sworn testimony that he did not have possession of the Aircraft Records, which would have been in two file boxes.  Colvin also repeated his outrageous claim that Boyd had stolen his own Aircraft Records.

27.

However, later in the Chapter 11 case, Colvin reversed course from his repeated prior sworn testimony (in the bankruptcy case and the state court cases) regarding the Aircraft Records.  Specifically, Colvin told Gary Marsh (Plaintiffs' counsel in the Chapter 11 case) that he indeed had a copy of the Aircraft Records and that the records consisted of approximately two banker boxes of documents.

28.

Such a reversal of testimony was of particular significance to Plaintiffs, who had been litigating for well over a year in state court to obtain the Aircraft Records, among other collateral.

957347-1

29.

In response to Colvin's complete reversal in testimony, the bankruptcy court ordered U.S. Jets to provide the Aircraft Records on August 28, 2008.

30.

Rather than promptly turn over the Aircraft Records as ordered by the bankruptcy court, by September 12, 2008, U.S. Jets had not provided documents or otherwise responded to the August 28, 2008 Order other than to say that Colvin and counsel for U.S. Jets would meet on September 17, 2008 "just to see what records [Colvin] has."

31.

On September 18, 2008, counsel for U.S. Jets informed Plaintiffs' bankruptcy counsel that "Colvin was mistaken about having a copy of the [Aircraft Records]." As such, neither Colvin nor U.S. Jets would produce the Aircraft Records. Thereafter, the Chapter 11 case was converted to Chapter 7 and the state court claims remanded to Clarke County.

*Colvin's Third Refusal to Comply with State Court Orders*

32.

Upon remand, the state court held a hearing to determine whether Colvin or U.S. Jets were in contempt of its June 25, 2008 Order. At that hearing, the Court reprimanded Colvin on his behavior.

33.

However, only a few days later, and in direct violation of the June 25, 2008 Order and explicit instructions from the state court judge (i) to produce all of Plaintiffs' collateral for inspection and (ii) not to remove any such collateral, Colvin removed the fuel farm (i.e.

Plaintiffs' collateral) and caused a spill of jet fuel onto the ground. The fuel spill caused the Athens-Clarke County Emergency Management Agency and others to respond in an emergency manner to prevent possible fires and/or serious contamination of the surrounding area. Although Colvin eventually returned the fuel farm after a harsh rebuke from the state court, Plaintiffs incurred in excess of $10,000.00 to reinstall the fuel farm, a cost which Colvin has refused to reimburse.

34.

Finally, in a complete defeat for Colvin, on March 6, 2009, the trial court found Colvin and U.S. Jets in willful contempt of its prior orders and ordered Colvin's incarceration. A true and correct copy of the March 6, 2009 Order is attached hereto as Exhibit C.

35.

Specifically, the May 6, 2009 Order found the following:

(a)     the missing tools and equipment had been given or sold to a person identified by Rob McDowell sometime between September 2008 and January 2009 (i.e. after the May 2008 court-ordered inspection);

(b)     the majority of the missing tools and equipment had been engraved with the words "U.S. Jets;"

(c)     Colvin did not know whether U.S. Jets included the depreciation of the missing tools or equipment on its taxes;

(d)     Colvin had been deposed three times during the state court litigation and had testified twice in open court but had never asserted that the Court was ordering an inspection of his personal property;

(e)      Colvin presented no documentary evidence to support his assertion that the

tools and equipment belonged to him personally instead of U.S. Jets;

(f)      Colvin's former employee testified that Colvin had the Aircraft Records in

April or May of 2007 but would not give them to Plaintiffs unless Plaintiffs

(1) sent a letter requesting the records that reflected the chain of custody, (2)

released the lien on the airport hanger and (3) provided a letter of apology to

Colvin;

(g)      Colvin's former employee also testified that Colvin later told him that Boyd

would have to sell his plane for parts due to Boyd's not having the Aircraft

Records; and

(h)      Colvin's former employee testified that any knowledgeable aviation person

would not throw away or dispose of an aircraft's log books or maintenance

records."

## COUNT I
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 727(a)(2)

36.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above.

37.

As set forth in detail above, Colvin has transferred, removed, destroyed, mutilated or

concealed property that serves as Plaintiffs' collateral within one year of the date of his

bankruptcy petition (i.e. December 30, 2010).

957347-1

38.

Specifically, Colvin has willfully failed to turn over the Aircraft Records to Plaintiffs, to the incredible detriment of Plaintiffs.  Without the Aircraft Records, Plaintiffs airplane is worth several hundreds of thousands of dollars less than it would be with the Aircraft Records.

39.

Pursuant to 11 U.S.C. § 727(a)(2), Colvin should be denied a discharge.

## COUNT II
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 727(a)(3)

40.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above.

41.

As set forth in detail above, Colvin has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained without just cause.

42.

Specifically, Colvin has willfully failed to turn over the Aircraft Records to Plaintiffs, to the incredible detriment of Plaintiffs.  Without the Aircraft Records, Plaintiffs airplane is worth several hundreds of thousands of dollars less than it would be with the Aircraft Records.

43.

In addition, Colvin willfully altered pages two and three of the lease between Jets R Us and U.S. Jets and forged Boyd's initials to those altered pages without Boyd's consent.  Colvin admits to such a wrongful act in the letter attached hereto as Exhibit D.

957347-1

44.

Colvin has also concealed, destroyed, mutilated, falsified, or failed to keep or preserve records that detail the use of Plaintiffs' assets, the disposition of said assets, information pertaining to the receipt of money for the use of said assets and that otherwise detail Colvin's financial condition and business transactions.

45.

Said books, documents, records, and papers included, but are not limited to, aircraft journey logs and the maintenance logbook.

46.

The aircraft journey log allows for the pilot to record all of the flights that they are involved with in an aircraft. In particular, an aircraft journey log allows for the pilot to record the day of the flight, the hours spent in the air, the names of any passengers or additional crewmembers as well as the destination. This document is very valuable, as it provides a history of flights that have been accomplished as well as providing backup documentation in the event that other logs are misplaced or lost. This type of log also is invaluable as a record of flight information pertinent to the maintenance of the aircraft.

47.

Another important and required aircraft logbook is the maintenance logbook. This logbook records the maintenance provided on an aircraft that is part of an ongoing maintenance schedule as well as any repairs that were enacted on the aircraft. This particular logbook is required by the FAA and is part of the historical record of the aircraft.

957347-1

48.

The aircraft logbook and the aircraft journey log are vital personal and business records that document important business transactions and occurrences such as the nature of the flights (to determine income from flight), amount of fuel used, maintenance, repairs, and improvements. These logs are necessary to compare reported income or expenses by Colvin or his company, to actual income or expenses.

49.

Additionally, in the state court litigation, Colvin admitted that he failed to keep or preserve recorded information pertaining to his business' activities, the funds he and his business received, and related information. Presumably, such records would have further demonstrated Colvin's fraudulent activities.

50.

Pursuant to 11 U.S.C. § 727(a)(3), Colvin should be denied a discharge.

## COUNT III
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 727(A)(4)

51.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above.

52.

In this Chapter 7 case, Colvin has made a false oath or account. Specifically, he testified at the 341 meeting of creditors that he did not possess the Aircraft Records. Such testimony is false.

53.

Pursuant to 11 U.S.C. § 727(a)(4), Colvin should be denied a discharge.

## COUNT IV
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 727(a)(7)

54.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above.

55.

Colvin has committed the acts referred to in Counts I and II in connection with the

Chapter 11 case of U.S. Jets, a company 100% owned by Colvin and with which Colvin is a co-

obligor with respect to Plaintiffs' debt.

56.

In addition, Colvin willfully and unlawfully took proceeds of U.S. Jets during the Chapter

11 bankruptcy case. See 11 U.S.C. § 727(a)(2) and (a)(3). That unlawful act was the basis for

an adversary proceeding filed by William Flatau (the Chapter 7 trustee when the U.S. Jets case

was converted), having a case number 09-03037. The adversary proceeding resulted in a default

judgment being entered against Colvin.

57.

Colvin made a false oath or account during the 341 meeting for U.S. Jets when he

testified that he did not have possession of the Aircraft Records when, in fact, he did have

possession of such records. See 11 U.S.C. § 727(a)(4).

58.

Colvin also made a false oath during the adversary proceeding referenced above.

Specifically, during a January 19, 2010 contempt hearing in the adversary proceeding, Colvin

testified that he did not own any property. However, subsequent to that hearing, Mr. Flatau

957347-1

discovered that Colvin did actually own an undivided interest in improved property in Oconee County.  However, Colvin was able to avoid further contempt proceedings by having his wife execute a promissory note secured by real estate.

59.

Colvin refused to obey the bankruptcy court's August 28, 2008 order in the Chapter 11 case which ordered the inspection of Plaintiffs' collateral in violation of 11 U.S.C. § 727(a)(6).

60.

Pursuant to 11 U.S.C. § 727(a)(6), Colvin should be denied a discharge.

## COUNT V
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above.

61.

Colvin has made numerous false representations to Plaintiffs with the purpose and intent to deceive them.  Specifically, Colvin has falsely represented his certifications and his insurance coverage as set forth above, and a wide range of other representations with a willful intent to deceive Plaintiffs in order to obtain funds and profits from the sale of the Plane and the subsequent unlawful use of the Plane.

62.

Based on Colvin's false representations, Plaintiffs provided valuable equipment and assets, and entered into a business relationship with Colvin, all under the reasonable and mistaken belief that such false representations were true.

957347-1

63.

Plaintiffs have been damaged as a result of Colvin's false representations.

64.

Pursuant to 11 U.S.C. § 523(a)(2), Colvin's debts to Plaintiffs should not be discharged.

## COUNT VI
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(4)

65.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above.

66.

As set forth above, Colvin has caused damage to Plaintiffs as a result of his fraud or defalcation while acting in a fiduciary capacity and his larceny.

67.

Pursuant to 11 U.S.C. § 523(a)(4), Colvin's debts to Plaintiffs should not be discharged.

## COUNT VII
## NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)

68.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above.

69.

As set forth above, Colvin has caused willful and malicious injury to Plaintiffs and Plaintiffs' property.

WHEREFORE Plaintiffs pray as follows:

(a) That the Court determine that Colvin is not entitled to a discharge; or in the alternative,

957347-1

(b) That the Court determine that Colvin's debts to Plaintiffs be excepted from discharge; and

(c) For an award of attorneys' fees and expenses as allowed by law; and

(d) For such other and further relief as is just and appropriate.

Respectfully submitted this 23rd day of May, 2011.

**FOLTZ MARTIN, LLC**

/s/ Jimmy C. Luke, II
Jimmy C. Luke, II
Georgia Bar Number 191817

Five Piedmont Center, Suite 750
Atlanta, Georgia 30305
Telephone: (404) 231-9397
Facsimile: (404) 237-1659
Email: jluke@foltzmartin.com
*Counsel for Plaintiffs*

957347-1

IN THE STATE COURT OF CLARKE COUNTY

STATE OF GEORGIA

FILED IN
CLERK'S OFFICE
SUPERIOR/STATE COURT

2008 MAY -1  PM 2: 30

BEVERLY LOGAN, CLERK
CLARKE COUNTY, GEORGIA

_____DOCKET INITIALS

RAYMOND O. BOYD,                    *
Assignee of Athens First Bank & Trust,
a Georgia State Bank,                *

        PLAINTIFF                   *      CIVIL ACTION

        VS.                         *      NO. ST-07-CV-0677

U. S. JETS, INC.,                   *

        DEFENDANT                   *
                                    *

## ORDER ON PLAINTIFF'S MOTION TO INSPECT SECURED COLLATERAL

The above-styled Motion to Inspect Secured Collateral having come before the

Court for a hearing at 9:00 a.m. on April 30, 2008, pursuant to the Notice dated April 3,

2008, and after hearing testimony, reviewing the evidence submitted and hearing

argument of counsel for the respective parties, it is hereby Ordered that the Motion of the

Plaintiff to Inspect Secured Collateral located at ~~185~~ 1050 Ben Epps Drive, Athens, Georgia,

described on the attached Schedule A is hereby granted.

The inspection shall occur on the 8th day of May, 2008, beginning at 9:00 a.m.

The Defendant and his attorney are hereby Ordered to produce the items and

documents in an open area within the premises for the Plaintiff to conduct his inspection.

The Plaintiff is not granted access to Defendant's files and records not listed on the

attached Schedule A.   In the event there is a disagreement about any of the collateral or

**EXHIBIT**

*A*

its inspection, it shall be brought to the attention of the Court for an in-camera inspection

and a decision regarding the disputed remaining issues.

The attorneys and parties are hereby Ordered to cooperate with each other to

accomplish a civil and orderly inspection of the secured collateral.

This 15th day of May, 2008.

Judge Kent Lawrence, Judge State Court
Athens-Clarke County, Georgia

Agreed and Consented
to as Form

John S. Noell, Jr., Attorney for
Plaintiff

Thomas H. Rogers, Jr., Attorney for
Defendant

SCHEDULE A

FILED AND RECORDED
03/20/2006 03:30PM
UCC Control #: 2820060000813
Ben Epps Airport, Athens,
Clerk of Superior Court
Athens-Clarke County

(a)  All of Borrower's buildings, structures, and all other leasehold improvements of every kind and description, located on property known as 1080 Ben Epps Drive, Athens, Georgia, and more particularly described in Lease Agreement dated 10/01/98 by and between Borrower and the Unified Amendment of Lease Agreement dated 10/01/98 by and between Borrower and the Unified Government of Athens-Clarke County. Also; (b) All of Borrower's accounts, contract rights, chattel paper, instruments, drafts and general intangibles, whether now existing or hereafter arising or acquired (herein collectively referred to as the "Receivables") and all of Borrower's interest in goods which shall have given or shall give rise to such Receivables, whether now existing or hereafter arising or acquire, including without limitation all of Borrower's right, title and interest in and to all lease agreements and rental contracts entered into between Borrower and its customers (including, without limitation, all rents, revenues, income, claims and rights to money arising under said lease agreements and rental contracts, or contract rights, benefits, discretions and powers arising thereunder) and all of Borrower's rights, title and interest in all Inventory (as defined below) which is the subject of such lease agreements and rental contracts; (c)  all inventory of Borrower, including all raw materials, goods in process, and finished goods of every kind or character, whether presently in existence or hereafter acquired and wherever located, and all direct and remote proceeds thereof (all such property is herein collectively referred to as the "Inventory"); (d)  all of Borrower's machinery, equipment, fixtures, furniture, furnishings, leasehold improvements and all other goods and tangible personal property of every kind and description whatsoever used or bought for use primarily in Borrower's business whether now owned or hereafter acquired by Borrower, together with all service contracts and manufacturer's or dealer's warranties relating thereto, all additions, replacements and substitutions thereto or therefor, as well as all attachments, accessions, parts, materials, supplies and accessories now or hereafter installed therein, affixed thereto or used in connection therewith (all of such property being hereinafter collectively referred to as the "Equipment"); and (e)  any other property of any nature whatsoever of Borrower now or hereafter with or in the possession of or assigned or hypothecated to the Lender for any purpose, including, but not limited to, balances, credits, deposits, accounts, items and moneys of Borrower now or hereafter with the Lender and all dividends and distributions on or rights in connection with any such property.  All of such property (including without limitation the Equipment, the Inventory and the Receivables) is hereafter collectively referred to as the "Collateral", and shall also include all direct and remote proceeds thereof.  As used herein, "proceeds" includes not only what is received upon sale, exchange, collection or other disposition of Collateral or loss of or damage to Collateral, but also all rents, profits and other revenues (including without limitation chattel paper, instruments, and money) derived from renting, leasing or otherwise permitting the use of Collateral.  (f) Assignment of Life Insurance Policy No. LF-1662-5200 insuring the life of John B. Colvin.

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the within **Order on Plaintiff's Motion to Inspect Secured Collateral** to:

(X)   **Plaintiff's Attorney** by mail to:

John S. Noell, Jr.
Cook, Noell, Tolley, Bates & Michael, LLP
P.O. Box 1927
Athens GA  30603

(X)   **Defendant's Attorney** by mail to:

Thomas H. Rogers, Jr.
Blasingame, Burch, Garrard, Bryant & Ashley
P.O. Box 832
Athens GA  30603

This  15t  day of May,  2008.

Angie Wagoner
State Court of Clarke County

IN THE STATE COURT OF CLARKE COUNTY

STATE OF GEORGIA

FILED IN
CLERK'S OFFICE
SUPERIOR/STATE COURT

2008 JUN 25   PM 3: 58

BEVERLY LOGAN, CLERK
CLARKE COUNTY, GEORGIA

————DOCKET INITIALS

RAYMOND O. BOYD,
Assignee of Athens First Bank & Trust,
a Georgia State Bank,
                Plaintiff,

    v.

U.S. JETS, INC.,
             Defendant.

:
:
:
:
:
:
:
:
:
:
:

Case No.: ST-07-CV-0677

## ORDER

    Plaintiff filed a Motion to Compel Defendant's Compliance with Order on Plaintiff's

Motion to Inspect Secured Collateral.  A hearing was held on the Motion on June 25, 2008.

After considering the evidence, testimony, and argument of counsel, the Court finds as follows:

    The Court entered an Order on May 1, 2008 granting the Plaintiff's Motion to Inspect

Secured Collateral at 1080 Ben Epps Drive in Athens-Clarke County.  The inspection was

scheduled to occur on May 8, 2008 at 9:00 a.m.  The Plaintiff, his counsel John S. Noell, and

Sgt. Bobby Toole of the Athens-Clarke County Sheriff's Department went to the location at 9:00

a.m. on May 8, 2008 for the inspection.  John Colvin, agent for Defendant, as well as his attorney

Thomas H. Rogers were present.  At the time of the inspection, certain documents and equipment

were not produced that were Ordered by the Court on May 1, 2008.  Testimony was established

this date that John Colvin is in possession of and has control over certain documents and

equipment which were not produced at the time of the inspection on May 8, 2008.

    The Court Orders that any and all documents in the Defendant's possession or in the

possession of Defendant's agent, John Colvin, are to remain in place and not to be deleted,

destroyed or otherwise disposed of in any manner.

1

EXHIBIT

tabbies

B

All such documents not previously provided in accordance with schedule A of the Court Order dated May 1, 2008 shall be provided to Plaintiff's counsel no later than **5:00 p.m. on Monday, June 30, 2008.**

Any objection to documents shall be filed with the Court and the Court will conduct an in camera inspection of the documents in Defendant's custody in terms of relevance.

Failure to produce documents that are in the possession of U.S. Jets, Inc. or its agent, John Colvin, will subject Mr. Colvin to contempt of the Court's Order and incarceration in the Athens-Clarke County Jail until such time as the documents and equipment are produced.

Any equipment, including but not limited to the tug, scaffold, jacks, desks, computers, copier, fax machine, and other items on site, are to remain on the premises at 1080 Ben Epps Drive.   If there is evidence that any item has been removed, destroyed or otherwise disposed of, the Court will address the removal in the appropriate manner.

Any and all equipment, including but not limited to the tug, scaffold, jacks, ground power unit, wheel assemblies, and tires, shall be available for inspection no later than **5:00 p.m. on Monday, June 30, 2008.**

Counsel for the respective parties are hereby directed to arrange a suitable day and time for such production and inspection.

The issue of attorney's fees and costs requested by Plaintiff will be reserved until the Court deems it appropriate to review the issue on a later date to be determined by the Court.

For the foregoing reasons, the Plaintiff's Motion to Compel is GRANTED subject to the requirements outlined above.

2

SO ORDERED, this _25_ day of June, 2008.


KENT LAWRENCE, JUDGE
STATE COURT OF CLARKE COUNTY

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the within **Order** to:

(X)     **Plaintiff's Attorney** by fax to (706) 548-0956  and by mail to:

> John S. Noell, Jr.
> Cook, Noell, Tolley, Bates & Michael, LLP
> P.O. Box 1927
> Athens GA 30603

(X)     **Defendant's Attorney** by fax to (706) 353-0673 and by mail to:

> Thomas H. Rogers, Jr.
> Blasingame, Burch, Garrard, Bryant & Ashley
> P.O. Box 832
> Athens GA 30603

This _25th_ day of June, 2008.

Angie Wagoner
State Court of Clarke County

IN THE STATE COURT OF CLARKE COUNTY

STATE OF GEORGIA

RAYMOND O. BOYD, ASSIGNEE OF   :
ATHENS FIRST BANK & TRUST,   :
A GEORGIA STATE BANK,   :
   Plaintiff,   :
  :
v.   :    CASE NO. ST-07-CV-0677
  :
U.S. JETS, INC.,   :
   Defendant.   :

## CORRECTED O R D E R

   On February 3, 2009, Plaintiff filed a Motion for an Expedited Hearing Regarding

Defendant's Failure to Comply with the Court Order of June 25, 2008 and Sanctions. The Court

having held a hearing on February 13, 2009, finds as follows:

   Plaintiff filed a Motion to Inspect Secured Collateral on April 3, 2008. A hearing was

held on April 30, 2008. This Court issued an Order on May 1, 2008, granting the Plaintiff's

Motion. The Court Ordered that the Secured Collateral – attached as "Schedule A" to the Order

– would be inspected at 1080 Ben Epps Drive in Athens, Georgia, on May 8, 2008. The Order

stated:

> The Defendant and his attorney are hereby Ordered to produce the items and documents
> in an open area within the premises for the Plaintiff to conduct his inspection. The
> Plaintiff is not granted access to Defendant's files and records not listed on the attached
> Schedule A. In the event there is a disagreement about any of the collateral or its
> inspection, it shall be brought to the attention of the Court for an in-camera inspection
> and a decision regarding the disputed remaining issues.

"Schedule A" included the following as collateral: (a) all of the Defendant's "buildings,

structures, and other leasehold improvements" at 1080 Ben Epps Drive; (b) all of the

Defendant's "accounts, contract rights, chattel paper, instruments, drafts and general intangibles .

. . ," all of the Defendant's "interest in goods which shall have given or shall give rise to such

Receivables, . . . including without limitation all of [Defendant's] right, title and interest in and

1



EXHIBIT

C

to all lease agreements and rental contracts entered into between [Defendant] and its customers .
. ."; (c) "all inventory of [Defendant] . . . and all direct and remote proceeds thereof"; (d) "all of

[Defendant's] machinery, equipment, fixtures, furniture, furnishings, leasehold improvements

and all other goods and tangible personal property of every kind and every description

whatsoever used for or bought for use primarily in [Defendant's] business . . . , together with all

service contracts and manufacturer's or dealer's warranties relating thereto, all additions,

replacements and substitutions thereto or therefor, as well as all attachments, accessions, parts,

materials, supplies and accessories . . ."; (e) "any other property of any nature . . . with or in the

possession of or assigned or hypothecated to [Plaintiff] for any purpose, including, but not

limited to balances, credits, deposits, accounts, items and moneys . . . and all dividends and

distributions on or rights in connection with any such property. All of such property . . . is . . .

referred to as the "Collateral . . ."; and (f) "assignment of Life Insurance Policy No. LF-1662-

5200 insuring the life of John B. Colvin."

Following the May 8, 2008, inspection, Plaintiff filed an Expedited Motion to Compel

Defendant's Compliance with Order on Plaintiff's Motion to Inspect Collateral on May 20, 2008.

A hearing was held on Plaintiff's Motion on June 25, 2008. The Court entered an Order on June

25, 2008, finding that:

> At the time of the inspection, certain documents and equipment were not produced that
> were Ordered by the Court on May 1, 2008. Testimony was established this date that
> John Colvin is in possession of and has control over certain documents and equipment
> that were not produced at the time of the inspection on May 8, 2008.

The Court Ordered that "any and all documents in the Defendant's possession or in the

possession of Defendant's agent John Colvin, are to remain in place and not to be deleted,

destroyed or otherwise disposed in any manner." The Defendant was ordered to provide all

documents not previously provided by June 30, 2008. Additionally, any and all equipment was

to be available for inspection on June 30, 2008. In the Order, this Court stated:

2

Any objection to documents shall be filed with the Court, and the Court will conduct an in camera inspection of the documents in Defendant's custody in terms of relevance. Failure to produce documents that are in the possession of U.S. Jets, Inc. or its agent, John Colvin will subject ... Colvin to contempt of the Court's Order and incarceration in the Athens-Clarke County Jail until such time as the documents and equipment are produced.

Subsequent to the June 25, 2008, Order, the Defendant filed a Bankruptcy Petition. This case was removed to the United States Bankruptcy Court for the Middle District of Georgia. A settlement agreement was reached in the United States Bankruptcy Court. The case was then remanded back to this Court by Order of James D. Walker, Jr., United States Bankruptcy Judge, on January 30, 2009. (Plaintiff's Exhibit 9, 2-13-09 hearing).

Pursuant to the United States Bankruptcy Court Order of Judge James D. Walker, Jr. dated January 29, 2009, the settlement agreement was approved and various other conditions were imposed. (Plaintiff's Exhibit 11, 2-13-09 hearing).   In paragraph 5 of the January 29, 2009, order, the hanger tenants were ordered to vacate the hanger facility and property by February 1, 2009. (Id.). Pursuant to paragraph 7(a), regarding the sale of the Assets of the bankruptcy estate, the Order stated:

> such Assets shall **not** include the maintenance records and logbooks of the Aircraft, as defined in the Settlement Agreement, (the "Books and Records") or any of the Debtor's equipment or other property or interests serving as additional collateral for the indebtedness owing to Mr. Boyd, including but not limited to the items listed on Exhibit A hereof (the "Secured Collateral")

(Id.). Additionally, in paragraphs 8 and 9, the Order gave the Plaintiff the ability to recover collateral to satisfy amounts owed. (Id.).

> The Trustee is authorized to transfer any and all interests in and to the Secured Collateral to Mr. Boyd and Jets R Us, subject only to the liens in such Secured Collateral held by Mr. Boyd and Jets R Us, and Mr. Boyd and/or Jets R Us shall be entitled to pursue recovery of the Secured Collateral as an additional means of recovering on the amounts owing to them in connection with the purchase agreement for the Aircraft, the Aircraft Lease and the AFBT Note and Security Agreement.

(Id., paragraph 8).

3

Plaintiff contends that Defendant and its agent, John Colvin, failed to comply with this Court's Order of June 25, 2008, by failing to produce both equipment and documents that are the collateral in this case. Specifically, Plaintiff alleges that a ground power unit, hydraulic cart, and ice machine were missing from the June 25, 2008, inspection  With respect to documents, Plaintiff alleges that Defendant did not produce: (1) written agreements for three (3) jets in San Antonio, three (3) jets in Oklahoma City, and the Leer 31 jet with tail number N731 GA; (2) documentation of revenue for the jets referenced in number 1; and (3) all flight log books and maintenance records (hereinafter "records") for the Leer 35 jet serial number 211 with current tail number N621 RB (formerly N44TT).

Defendant asserts that neither the company nor its agent, John Colvin, are in the possession of the equipment and documents Plaintiff contends are collateral.  Defendant contends that all of the defined collateral in its possession or the possession of its agent was produced as directed by the Court. Defendant asserts that the ground power unit and hydraulic cart were leased and the company no longer has the items. With respect to the ice machine, Defendant asserts that the ice machine belonged to John Colvin's son who removed it from the facility. Defendant contends that there are no written lease agreements for the jets in San Antonio or Oklahoma City, as there was no lease for the jets and Defendant merely received a brokerage fee for arranging flights on the jets.  Defendant continues to assert that neither it nor its agent, John Colvin, is in possession of any log books or records for the Leer 35 jet.

With respect to the ground power unit and the hydraulic cart, John Colvin testified that the items were both leased. When the leases expired, the units were returned and sold. However, Defendant did not produce any documentation or evidence of any lease as to either item, the termination of the leases, return of the items, documents reflecting the sale of the ground power unit and hydraulic cart, or as to whom he sold such equipment.

4

As to the ice machine, John Colvin testified that the ice machine belonged to his son. The son did not testify at the hearing on February 13, 2009. The Defendant produced no documentation or evidence showing any ownership of the ice machine by John Colvin's son.

David Shreve, a former employee of the Defendant who is currently an employee of the Plaintiff, testified at the hearing regarding various tools and other equipment. Mr. Shreve was formerly director of maintenance with the Defendant. While in that capacity, Mr. Shreve engraved tools and other equipment with the words "U.S. Jets." After leaving the employment of the Defendant, Mr. Shreve contacted John Colvin in approximately September 2008 regarding any tools that the Defendant may have for sale. At that time, Colvin informed Mr. Shreve that the tools were not for sale. In January of 2009, Mr. Shreve again contacted Colvin about selling some tools and Colvin informed him that he had sold the hydraulic cart and power unit, and that the rest of the tools were either given or sold to a person identified as Rob McDowell. Mr. Shreve met with Rob McDowell and purchased various tools and other equipment for $750. Some of the items purchased were presented in open court. The majority of the tools and equipment purchased by Mr. Shreve were engraved with the words "U.S. Jets". Mr. Shreve testified that other equipment and tools belonging to the Defendant U.S. Jets, Inc. were on Mr. McDowell's property and were not for sale. On cross-examination, Mr. Shreve admitted that he was not directed by anyone to engrave the tools and equipment with the words "U.S. Jets" while he was employed with the Defendant. Additionally, he testified that he did not know if the tools that were used and engraved were purchased by the Defendant or John Colvin personally.

John Colvin testified at the hearing that the tools and equipment at issue were all purchased by him personally and not the Defendant U.S. Jets, Inc.. According to Colvin's testimony, after he purchased the tools and equipment, he then permitted the Defendant company to use the items. Colvin did not inform Mr. Shreve that he had personally purchased the tools and equipment, nor did he tell Mr. Shreve to engrave the items with the words "U.S. Jets."

5

At the hearing, the evidence established that the Defendant removed all items, other than a map on the wall, from the hanger facility as of February 1, 2009. The Defendant asserts that all items were removed pursuant to the Order of the United States Bankruptcy Court.. The Plaintiff asserts that the United States Bankruptcy Court Order only stated that the tenants were to leave the facility, but not with the collateral.

John Colvin testified at the hearing that some of the items removed from the hanger facility were sold, some were discarded and some were in storage at a barn on his property at 1625 Bob Godfrey Road. Additionally, Colvin testified that he did not believe the items removed were collateral for the loan because he did not receive consideration for them. Colvin asserted that the Plaintiff assumed the items were the property of the Defendant U.S. Jets, Inc., but all items were the property of John Colvin, personally. Colvin asserted that all property that was in the possession of Rob McDowell had belonged to Colvin personally and not to Defendant U.S. Jets, Inc.. On cross-examination, Colvin admitted that he did not know whether the Defendant, U.S. Jets, Inc., included the depreciation of the tools or equipment in its taxes.

Upon a review of the file in the case, evidence and testimony presented at the hearing, as well as the arguments of counsel, the Court finds that Defendant's agent, John Colvin, failed to comply with the Court's Order of June 25, 2008, as to the inspection of equipment that was secured collateral. The Court disagrees with Colvin's assertion that the items were not collateral. Colvin asserted on February 13, 2009, for the first time, that the tools and equipment used at the hanger facility and used by U.S. Jets were his personal property. Colvin was deposed October 12th, 15th and 30th of 2007. At no point in his deposition did he assert that any items listed as secured collateral were his personal property and not the property of Defendant U.S. Jets, Inc.. This Court held hearings regarding the inspection of the secured collateral on April 30, 2008 and June 25, 2008. At no point during those hearings did Colvin assert that the Court was ordering an inspection of his personal property instead of the property of the

6

Defendant corporation. In both the May 1, 2008, and June 25, 2008, Orders, the Court leaves

open the option of an in camera inspection if there is any dispute between the parties as to the

collateral or documents to be inspected. No request for an in camera inspection was made by

Colvin or the Defendant U.S. Jets, Inc.. Further, the Court finds that Colvin presented no

documentary evidence to support his assertion that the tools and equipment belonged to him

personally instead of the Defendant corporation. In fact, Colvin was not even aware of whether

Defendant U.S. Jets, Inc., of which he is the sole shareholder, included the depreciation of the

tools and equipment in its corporate tax filings. The Court, having previously Ordered that the

secured collateral be inspected, finds that Colvin willfully failed to comply the Court's Order of

June 25, 2008 and is in willful contempt of this Court by his actions in disposing of and selling

property without first ascertaining from the Court that the disposition and sale of property was

appropriate.

    At the hearing on February 13, 2009, Plaintiff testified as to the importance of the Leer

35 Jet log books and records. Plaintiff asserts that when he leased the Jet aircraft to the

Defendant corporation, John Colvin, as agent of the Defendant corporation, maintained the

aircraft's log books and maintenance records in his office. Plaintiff asserts that he has been

unable to get either the original records or copies of the aircraft records from U.S. Jets, Inc.'s

agent John Colvin. The records are essential to the value of the leased aircraft for any future sale

as well as to obtain and maintain appropriate certification with the FAA. Without the log books

and maintenance records for the aircraft, the Plaintiff asserts the aircraft may have to be sold

merely for parts. Plaintiff testified he offered to pay John Colvin $500,000 for the leased aircraft

provided the aircraft log books, maintenance records and the hanger were included in the sale.

Colvin rejected Plaintiff's offer.

    William "Bill" Lacey testified at the hearing on February 13, 2009. Mr. Lacey is a pilot

that previously worked for John Colvin and the Defendant U.S. Jets, Inc.. Mr. Lacey terminated

7

his employment with the Defendant in approximately December 2006 or January 2007. He is

presently an independent contractor who works with the Plaintiff and Jets R Us, LLC. Mr.

Lacey testified that he spoke to John Colvin in person in either April or May of 2007 regarding

the aircraft records for the Leer Jet. At that time, he observed that Colvin had four or five

banker's-type boxes in his office containing the records of the leased corporate jet. When asked

for the records, Colvin told Mr. Lacey that he would give Plaintiff Boyd the records if Plaintiff:

(1) sent a letter requesting the records that reflected the chain of custody; (2) released the lien on

the hanger facility; and (3) provided a personal letter of apology. Mr. Lacey wrote Colvin's

demands down and provided them to Plaintiff. Towards the end of April of 2007, Mr. Lacey was

at the hanger facility when Plaintiff Boyd was attempting to have the locks changed to secure the

facilities. On that date, Mr. Lacey testified that Colvin told him that he would see to it that

Plaintiff Boyd would have "to sell his plane for parts." Mr. Lacey later learned that Colvin had

reported the Jet records stolen the day after the statement was made by Colvin. In Mr. Lacey's

opinion, any knowledgeable aviation person would not throw away or dispose of an aircraft's log

books or maintenance records.

John Colvin testified at the February 13, 2009, hearing that he did not have the aircraft's

records and could not produce them. Colvin asserts that the last time he saw the records was the

day that Plaintiff attempted to break into his facility. Colvin further asserts that he believes

Plaintiff stole the aircraft records. Colvin further asserts that he did not throw away, shred, burn,

dispose of, or give the records to anyone else. Colvin testified that he had told Ernie Harris, his

attorney in the bankruptcy proceeding, that he had received copies of the records in 2007 and

would provide such records. However, Colvin now claims he was mistaken at the time because

he no longer has copies of such records. Colvin further contends that since the copies of the

records were of no importance, the copies of the records were discarded at some time in 2007.

When prompted by the Court as to who discarded the aircraft records, Colvin refused to identify

8

the person who discarded the records. He only asserted that he did not have the records, and was in full compliance with the Court's Order.

The Court finds it unreasonable and incredulous to believe that Plaintiff Boyd would steal his own aircraft records, and then go to the trouble and expense of filing suit to recover the records which are required to operate, maintain and sell the aircraft in issue. Colvin's actions and statements to others are consistent with a deliberate attempt to destroy the value of Plaintiff's aircraft, and have it in Colvin's own words "sold for parts." After reviewing the file, the evidence and testimony at the hearing on February 13, 2009, the Court finds that the Defendant, by and through its agent John Colvin, willfully failed to comply with the Court's Order of June 25, 2008, to produce secured collateral, including the aircraft flight log and maintenance records, and is in contempt of this Court.

The Court hereby finds that the failure to comply with the Court's Order of June 25, 2008, is willful and illustrates contemptuous conduct on the part of the Defendant and its agent, John Colvin, which this Court must address by the remedial sanctions afforded by the civil contempt powers of this court as provided for in O.C.G.A. § 15-7-4.

The Court ORDERS that John Colvin, as agent of Defendant, produce the following items to Plaintiff's counsel within 10 days of the date of this order:

(1)   All original records, including flight log books, maintenance records, and FAA documents pertaining to the Leer 35 Jet are to be provided to Plaintiff's counsel;

(2)   All Federal and State personal tax returns for John Colvin for the years 2003 through 2008 are to be provided to Plaintiff's counsel;

(3)   All Federal and State business tax returns for U.S. Jets, Inc. for the years 2003 through 2008 are to be provided to Plaintiff's counsel.

In the event that the items listed above are not produced to Plaintiff's counsel within 10 days of the date of this order, the Court Hereby ORDERS that John Colvin, as agent of

9

Defendant, shall be incarcerated in the Clarke County Jail for so long as he fails to fully comply with the Court's Order set forth in items numbered 1, 2 and 3 above in their entirety.

In the event that John Colvin is incarcerated, it is further ORDERED that John Colvin shall be immediately released from jail upon the fulfillment of the court-ordered conditions set forth in items numbered 1, 2 and 3 above in their entirety. The Court shall notify the Sheriff, and or his lawful Deputy, when John Colvin has complied with the Court's order to effectuate the release of Colvin from jail.

Additionally, the Court finds that there is not probable cause for the issuance of a search warrant for the property of Rob McDowell and denies Plaintiff's request for such.

SO ORDERED, this 5 day of _March_____, 2009.


KENT LAWRENCE, JUDGE
STATE COURT OF CLARKE COUNTY

10

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the **Corrected Order** to:

**(X)**   **Plaintiff's Attorney** by  fax (706) 548-0956 and by mail to:

> **John S. Noell, Jr.**
> **Cook, Noell, Tolley & Bates, LLP**
> **Post Office Box 1927**
> **Athens GA  30603**

**(X)**   **Defendant's Attorney** by fax (706) 353-0673 and by mail to:

> **Thomas H. Rogers, Jr.**
> **Thomas F. Hollingsworth, III**
> **Blasingame, Burch, Garrard & Ashley, P.C.**
> **P.O. Box 832**
> **400 College Avenue, Ste 320**
> **Athens GA  30601**

This 6th day of March, 2009.

**Angie Wagoner**
**State Court of Clarke County**

Dear Mr. Boyd,                                              December 11, 2006

       In regard to providing you with the individual who retyped pages 2 and 3 of the lease agreement that would be myself as I have indicated before.

       In regard to the address, I requested that Bombardier that they send that information directly to my home address.

Thank you

John H. Colvin

**EXHIBIT**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 23, 2011, I served all parties listed below via U.S. Mail with a copy

of the foregoing.

John Colvin
455 Lem Edwards Road
Winterville, GA 30683

John Colvin
PO Box 82223
Athens, GA 30608

William Russell Patterson, Jr., Esq.
Ragsdale Beals Seigler Patterson & Gray
229 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30303-1629

This 23rd day of May, 2011.

/s/ Jimmy C. Luke, II
Jimmy C. Luke, II
Georgia Bar Number 191817

**FOLTZ MARTIN, LLC**
Suite 750, Five Piedmont Center
Atlanta, Georgia  30305
Telephone:  (404) 231-9397
Facsimile:  (404) 237-1659
Email: jluke@foltzmartin.com
*Counsel for Plaintiffs*

957347-1