

**SIGNED this 28 day of August, 2012.**

_____
**James P. Smith
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| JOHN BARRY COLVIN, | : | |
| | : | |
| Debtor | : | Case No. 10-32367-JPS |
| | : | |
| JETS R US, LLC and | : | |
| RAYMOND O. BOYD, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | Adversary Proceeding |
| | : | No. 11-3035-JPS |
| JOHN BARRY COLVIN, | : | |
| | : | |
| Defendant | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Plaintiffs:    Jimmy C. Luke, II
Foltz Martin, LLC
3525 Piedmont Road, N.E.
5 Piedmont Center
Suite 750
Atlanta, GA 30305

Yasha Heidari
Heidari Power Law Group, LLC
P. O. Box 79217
Atlanta, GA 30357

    For Defendant/Debtor:    William Russell Patterson, Jr.
Ragsdale Beals Seigler Patterson & Gray, LLP
229 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30303-1629

## **MEMORANDUM OPINION**

Before the Court is Plaintiffs' motion for partial summary judgment in which Plaintiffs seek a determination that certain claims against Defendant/Debtor ("Debtor") are nondischargeable under 11 U.S.C. § 523(a)(6), and that Debtor should be denied a discharge under 11 U.S.C. §727(a). The Court, having considered the record and the applicable law, now publishes this memorandum opinion.

"A motion for summary judgment should be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c)... *Celotex Corp. v. Catrett*, 477 U.S. 371, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *see also Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Cast Steel*, 347 F.3d at 1301." *Midrash Sephardi, Inc., v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004), *cert. denied* 543 U.S. 1146, 125 S.Ct. 1295, 161 L.Ed.2d 106 (2005).

Although Rule 56 was completely rewritten in 2010, no change was made to the summary judgment standard itself or to the burdens imposed on movants and opponents. Wright, Miller & Kane, 10A *Federal Practice and Procedure*, Text of Rule 56, n.6 (Supp. 2011).

Plaintiffs have the burden of proof on their objections to discharge and dischargeability.  United States v. Mitchell (In re Mitchell), 633 F.3d 1319, 1327 (11th Cir. 2011); Jennings v. Maxfield (In re Jennings), 533 F.3d 1333, 1339 (11th Cir. 2008). Exceptions to discharge are strictly construed in favor of the debtor.  Transouth Financial Corp. of Florida v. Johnson, 931 F.2d 1505, 1509 (11th Cir. 1991).

## FACTS

At all relevant times, Debtor John Barry Colvin has been the sole owner and CEO of U.S. Jets, Inc. ("U.S. Jets").  Raymond O. Boyd ("Boyd") has been the sole member and owner of Jets R US, LLC. ("Jets R US").

In June 2006, Jets R US purchased a Lear jet, model number 35A, from U.S. Jets. Contemporaneous therewith, U.S. Jets leased the jet back from Jets R US for a term beginning June 1, 2006 and ending May 31, 2013.  In addition, shortly thereafter, AFB&T, a Georgia bank, formerly known as Athens First Bank & Trust Co., assigned to Boyd a promissory note and security agreement (as well as other collateral documents) from U.S. Jets.

Paragraph 12 of the jet lease agreement between Jets R US and U.S. Jets provided, in pertinent part:

> Maintenance.  Lessee shall repair and maintain the aircraft during the term of this Lease so as to keep it in good and safe operation condition as when delivered to Lessee, ordinary deterioration excepted...
>
> All inspections, repair modifications, maintenance and overhaul work shall be performed in accordance with the

> standard set forth by the Federal Aviation Regulations. Lessee
> shall maintain all logbooks and records pertaining to the
> aircraft during the term of this Lease in accordance with the
> Federal Aviation Regulations. Such records shall be made
> available for examination by Lessor at all times.

In the spring of 2007, disputes arose between the parties regarding alleged defaults resulting in Jets R US repossessing the jet.[1] Thereafter, Boyd and U.S. Jets became embroiled in litigation in the State Court of Clarke County, Georgia (Civil Action No. ST-07-CV-0677).

During that litigation, disputes arose regarding the inspection of records and property belonging to U. S. Jets and in which Boyd held a security interest under the assigned note and security agreement. On February 13, 2009, the state court held a hearing on Boyd's motion requesting sanctions against U.S. Jets for its failure to comply with a prior inspection order by the court. At the hearing, both Boyd and Debtor testified, at length, about the aircraft flight log and maintenance records for the jet ("Aircraft Records"), the importance of the Aircraft Records, their whereabouts, Debtor's failure to produce the Aircraft Records and Debtor's contention that Boyd had stolen the Aircraft Records. On March 6, 2009, the state court entered its Corrected Order ("Contempt Order") in which it found, in part:

> John Colvin testified at the February 13, 2009, hearing that he
> did not have the aircraft's records and could not produce them.
> Colvin asserts that the last time he saw the records was the day
> that Plaintiff attempted to break into his facility. Colvin
> further asserts that he believes Plaintiff stole the aircraft
> records. Colvin further asserts that he did not throw away,

---

[1] Due to the parties' disputes as to the underlying facts, it is unclear whether these alleged defaults related to the jet lease agreement or the assigned note and security agreement. However, resolution of those disputes is not necessary for purposes of this decision.

5

>   shred, burn, dispose of, or give the records to anyone else.
>   Colvin testified that he told Ernie Harris, his attorney in the
>   bankruptcy proceeding [sic]², that he had received copies of
>   the records in 2007, and would provide such records.
>   However, Colvin now claims he was mistaken at the time
>   because he no longer has copies of such records. Colvin
>   further contends that since the copies of the records were of no
>   importance, the copies of the records were discarded at some
>   time in 2007. When prompted by the Court as to who
>   discarded the aircraft records, Colvin refused to identify the
>   person who discarded the records. He only asserted that he
>   did not have the records and was in full compliance with the
>   Court's [prior orders regarding inspection of property and
>   records].
>
>   The Court finds it unreasonable and incredulous to believe
>   that Plaintiff Boyd would steal his own aircraft records, and
>   then go to the trouble and expense of filing a suit to recover
>   the records which are required to operate, maintain, and sell
>   the aircraft at issue. Colvin's actions and statements to others
>   are consistent with a deliberate attempt to destroy the value of
>   Plaintiff's aircraft and have it in Colvin's own words "sold for
>   parts." After reviewing the file, the evidence and testimony at
>   the hearing on February 13, 2009, the Court finds that
>   Defendant, by and through its agent, John Colvin, willfully
>   failed to comply with the Court's Order of June 25, 2008, to
>   produce secured collateral, including the aircraft flight logs
>   and maintenance records and is in contempt of this Court.
>
>   The Court hereby finds that the failure to comply with the
>   Court's Order of June 25, 2008, is willful and illustrates
>   contemptuous conduct on the part of Defendant and its agent,
>   John Colvin, which this Court must address by the remedial
>   sanctions afforded by the civil contempt powers of this court
>   as provided for in O.C.G.A. § 15-7-4.

The state court then ordered that Debtor would be incarcerated unless he produced the

Aircraft Records by a date certain.

---

² The records of this Court show that Ernie Harris was actually the attorney for U.S. Jets in its bankruptcy case and not the attorney for Debtor Colvin. However, this factual error is irrelevant to this decision.

U.S. Jets appealed this decision to the Court of Appeals for the State of Georgia. In an opinion published July 12, 2011 (Case No. A11A0348), the Georgia Court of Appeals dismissed the appeal because U.S. Jets did not file an appellant's brief as required by that court's rules. In the opinion, the court further held:

> We note that John Colvin has filed a brief denominated "BRIEF OF APPELLANT JOHN COLVIN," therein enumerating claims of error challenging the contempt rulings against him....We conclude that, because Colvin failed to file a notice of appeal from the contempt order, he failed to invoke this Court's jurisdiction to review the rulings against him.
>
> Colvin was not initially a party to this litigation in the trial court, but when the trial court subsequently held Colvin in contempt, Colvin was made a party to the litigation. See Travelers Ins. Co. v. Segan, 190 Ga App. 66, 67 (1) (378 S.E. 2d 367) (1989). Colvin was thus entitled to file a notice of appeal from the contempt order, but he failed to do so.

Thereafter, on November 7, 2011, the Supreme Court of Georgia (Case No. S11C1786) denied Debtor's petition for certiorari.

Debtor filed this Chapter 7 bankruptcy case on December 30, 2010. Boyd and Jets R US filed this adversary proceeding against Debtor on April 20, 2011.

## **CONCLUSIONS OF LAW**

In support of their motion for partial summary judgment, Boyd and Jets R US rely almost entirely upon the Contempt Order. They contend that collateral estoppel bars relitigation of any issues decided by the state court and that the Contempt Order establishes the facts necessary to show that their claims against Debtor are nondischargeable and that Debtor is not entitled to a discharge.

7

"Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior action.  The principles of collateral estoppel apply in discharge exception proceedings in bankruptcy court."  Bush v. Balfour Beatty Bahamas, Ltd.  (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995).  In St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672 (11th Cir. 1993) the Eleventh Circuit Court of Appeals stated:

> If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect....  While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability.

991 F.2d at 675-76.

Thus, the Court will look to Georgia law to determine the effect of the state court judgment.  In Georgia:

> "[T]he doctrine of collateral estoppel precludes relitigation when there is: (1) an identity of parties or their privies; (2) a previous determination of the same or similar issues in a previous court with competent jurisdiction; and (3) [collateral estoppel] precludes only those issues actually litigated or by necessity had to be decided for the judgment to be rendered."

Cincinnati Ins. Co. v. MacLeod, 259 Ga. App. 761, 577 S.E. 2d 799, 803 (2003) cert. denied.

Debtor asserts that the first requirement, identity of parties or their privies, is not present because he was not a named defendant in the state court action.  However, the Georgia Court of Appeals, in dismissing the appeal of the Contempt Order, specifically held that Debtor became a party to the state court litigation when he, individually, was held in

8

contempt.

Further, the record shows that Debtor participated in, had a sufficient stake in, and had a similar or identity of interest with U.S. Jets in the state court contempt proceedings. "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity is found to exist, all are alike concluded and bound by the judgment. [Cite]" Smith v. Wood, 115 Ga. App. 265, 269, 154 S.E. 2d 646, 649-50 (1967). The state court's Contempt Order makes clear that both Debtor and U.S. Jets had the same interest at stake, i.e. whether they would be held in contempt for failing to produce the Aircraft Records and other property of U.S. Jets. Accordingly, for purpose of collateral estoppel, Debtor and U.S. Jets are privies and Debtor is bound by the Contempt Order.[3]

Debtor next argues that the Contempt Order is only an interlocutory order and not a final adjudication of the entire state court litigation. Debtor also argues that the Contempt Order is not a judgment.

This case is similar to the case of Rich v. New, 174 Ga. App. 73, 329 S.E. 2d 176 (1985), cert. denied. In that case, in a discovery dispute in a prior civil action, Rich was

---

[3] Although Debtor did not raise the issue, collateral estoppel also requires an identity of parties or their privies with respect to the party seeking to enforce the prior order. Wickliffe v. Wickliffe Co., 227 Ga. App. 432, 489 S.E. 2d 153 (1997) cert. denied. Boyd is the sole member and owner of Jets R US. He and Jets R US had an equal interest in recovering the Aircraft Records. Accordingly, although Jets R US was not a party to the state court litigation, for purposes of collateral estoppel, Boyd and Jets R US are privies. See Miller v. Steelmaster Material Handling Corp., 223 Ga. App. 532, 478 S.E. 2d 601, 604 (1996) cert. denied (the former husband and a corporation in which he was a fifty percent shareholder were privies with respect to a claim the corporation had against the former wife where the ownership of the corporation was resolved as part of the division of marital property in a divorce decree).

ordered to produce certain documents. When he failed to do so, the trial court found him in contempt and sentenced him to jail unless he produced the documents by a date certain.

Another hearing was held to determine whether he had purged himself of the contempt by producing the documents. The trial court found that Rich had not purged himself of contempt and ordered him to jail. Rich did not appeal that decision.

Thereafter, Rich brought a separate suit against the attorney who had represented the opposing party in the underlying litigation, alleging that the attorney and Rich had made a separate deal with regard to the trial court's contempt order and that the attorney had then falsely testified at the hearing where the court found that no such deal existed and ordered Rich to jail. The Court of Appeals of Georgia held:

> The issue of whether [Rich] was in contempt of court or had purged himself of that contempt is not a subject which can be relitigated. In [the prior case], the trial court heard the evidence in that regard and found that [Rich] was in willful contempt of its order. That finding, from which no appeal was taken, is res judicata. The credibility of both [Rich] and [the attorney] was an issue for the trial court when it conducted the hearing on September 28, 1981. That issue was obviously resolved in favor of [the attorney] and against [Rich].

329 S.E. 2d at 177.

With respect to the Contempt Order, the Georgia Court of Appeals dismissed the appeal and the Georgia Supreme Court denied certiorari. Thus, the order is a final order for purposes of collateral estoppel.

The Court must now determine whether the Contempt Order resolved the same or similar issues which are presented in this adversary proceeding and whether those issues were actually litigated and necessary to the decisions reached by the state court in the

10

Contempt Order.  This requires a review of each of the counts in this adversary proceeding on which Plaintiffs rely.

In their motion for partial summary judgment, Plaintiffs contend that Debtor should be denied a discharge in bankruptcy under 11 U.S.C. § 727(a)(2),(3),(4), and (7).  These sections provide:

> (a) The court shall grant the debtor a discharge, unless–
>     . . .
>   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>         (A) property of the debtor, within one year before the date of the filing of the petition; or
>         (B) property of the estate, after the date of the filing of the petition;
>   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>   (4) the debtor knowingly and fraudulently, in or in connection with the case–
>         (A) made a false oath or account;
>         (B) presented or used a false claim;
>         (C) gave, offered, received, or attempted to obtain money, property, or advantage, for acting or forbearing to act; or
>         (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to debtor's property or financial affairs;
>     . . .
>   (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under

11

the Bankruptcy Act, concerning an insider;

Section 727(a)(7) extends the basis for denial of discharge to the debtor's misconduct in a related bankruptcy case of a corporation of which the debtor is an officer, director or controlling person. See 11 U.S.C. § 101(31)(A)(iv) (defining insider of a corporation). Debtor, as sole owner and CEO of U.S. Jets, was an insider of U.S. Jets.

Count I § 727(a)(2)

Plaintiffs contend that the Contempt Order establishes that Debtor, with intent to hinder, delay or defraud the Plaintiffs, destroyed or concealed the Aircraft Records. However, section 727(a)(2) applies to property of the debtor or property of the debtor's estate. The Contempt Order makes no finding that the Aircraft Records were property of Debtor.[4] Thus, the Contempt Order is not entitled to collateral estoppel effect with respect to this issue and partial summary judgment on this count is denied.

Count II § 727(a)(3)

Plaintiffs contend that Debtor concealed, destroyed or failed to keep or preserve records from which Debtor's financial condition or business transactions might be ascertained. However, the Aircraft Records were for a jet leased by U.S. Jets. The records may pertain to U.S. Jet's business transactions, but the Contempt Order makes no finding

---

[4] The jet lease agreement required U.S. Jets to maintain the Aircraft Records, thus suggesting that the Aircraft Records were owned by U.S. Jets. However, at the February 13, 2009, state court hearing, Debtor testified that he thought the Aircraft Records were owned by Jets R US since Jets R US owned the jet. Transcript of state court hearing of February 13, 2009, p. 142 (Docket No. 71-1).

that the Aircraft Records are Debtor's business records, or that they would reflect Debtor's financial condition or business transactions. Thus, partial summary judgment on this count is denied.

Count III § 727(a)(4)

Plaintiffs contend Debtor made a false oath when Debtor testified at the section 341 meeting of creditors for U.S. Jets[5] that Debtor did not have possession of the Aircraft Records. However, section 727(a)(4) refers to a false oath in Debtor's case, not the case of U.S. Jets. The Contempt Order does not address this issue. Thus, partial summary judgment on this count is denied.

Count IV § 727(a)(7)

In their motion, Plaintiffs contend that Debtor's false testimony given in the U.S. Jets' bankruptcy case requires denial of discharge in Debtor's case. The testimony which Plaintiffs contend was false was given at the August 11, 2008, section 341 meeting of creditors in the U.S. Jets' case and at a cash collateral hearing in the U.S. Jets' case on August 28, 2008. Plaintiffs also rely on a series of letters and emails sent by U.S. Jets' bankruptcy counsel, Mr. Harris, in September 2008.

By its terms, section 727(a)(7) requires that the alleged misconduct in the case of U.S. Jets take place within one year before the date of the filing of Debtor's bankruptcy petition or during Debtor's case. Debtor's case was filed on December 30, 2010, more than one year after the alleged misconduct occurred. Accordingly, partial summary judgment on

---

[5] U.S. Jets filed a Chapter 11 bankruptcy case in this Court on July 8, 2008 (Case No. 08-30797). The case was converted to a Chapter 7 case on October 22, 2008.

this count is denied.

Count V § 523(a)(6)

In their motion, Plaintiffs contend that they suffered injury by Debtor's failure to produce the Aircraft Records and Debtor's sale or other disposition of certain personal property in which Boyd had a security interest.  They contend that their claims for damages resulting from these injuries are nondischargeable under 11 U.S.C. § 523(a)(6).  That section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

In Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.E. 2d 90 (1998), the Supreme Court held that, as used in section 523(a)(6), "willful" means "a deliberate or intentional injury."  In Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012), the Eleventh Circuit held that "malicious" means "wrongful and without just cause even in the absence of personal hatred, spite or ill will" and that to establish malice "a showing of specific intent to harm another is not necessary."

Aircraft Log Book and Records

Jets R US is the owner of the jet at issue.  Any claim for damages would belong to it.  The jet lease agreement required U.S. Jets, as lessee, to repair and maintain the jet, to maintain all log books and records pertaining to the jet, and to make such records available for examination by Jets R US.  Without the Aircraft Records, which establish the jet's

14

maintenance and repair history, the aircraft cannot be sold except, possibly, for parts.[6]

In the Contempt Order, the state court rejected Debtor's explanations as to why he had not produced the Aircraft Records. Debtor's arguments in this case that he no longer has the Aircraft Records or that Boyd stole those records were all fully litigated in the state court case and resolved in favor of Plaintiffs and against Debtor. The state court found that Debtor had willfully failed to produce the records and that his "...actions and statements to others are consistent with a deliberate attempt to destroy the value of Plaintiffs' aircraft, and have it in Colvin's own words 'sold for parts.' " This issue was actually litigated and was necessary for the court's finding of contempt.

It is undisputed that Debtor has still not produced the Aircraft Records. The failure to produce the Aircraft Records has caused damage to the value of the jet just as if Debtor had physically damaged the jet. The findings of the state court are entitled to collateral estoppel effect. When coupled with the fact that the Aircraft Records have still not been produced, the Court finds that Plaintiffs have established that Debtor willfully and maliciously injured the property of Jets R US. Accordingly, Jets R US is entitled to summary judgment. Pursuant to 11 U.S.C. § 523(a)(6), its claim against Debtor for damages that it suffered will be nondischargeable.

However, Jets R US has introduced no evidence as to the amount of damages to

---

[6] Although Debtor denied this in his Answer (See Answer, para. 19, Docket No. 11) he has introduced no evidence to support this denial. On the other hand, in support of their motion for partial summary judgment, Plaintiffs filed a transcript of the February 13, 2009, hearing before the state court. At that hearing, Boyd testified at length and without contradiction as to the importance of the Aircraft Records and the impact that the loss of those records would have on the value of the jet.

which it is entitled.[7]

> Where tangible personal property has been damaged or destroyed, the plaintiff has the burden of furnishing evidence sufficient to enable [the court] to calculate the amount of damages with reasonable certainty...The measure of damages for loss of tangible personal property is the difference between the fair market value of the property immediately prior to the damage and immediately after the damage.

Hodges v. Vara, 658 Ga. App. 815, 817, 603 S.E. 2d 327, 331 (2004) cert. denied.

Accordingly, the Court cannot, at this time, enter judgment for the amount of damages.

Boyd's Collateral

In the Contempt Order, the state court also considered allegations by Boyd that Debtor had disposed of certain personal property of U.S. Jets in which Boyd held a security interest. The court found that U.S. Jets and Debtor had failed to produce a ground power unit, hydraulic cart and an ice machine. As to the ground power unit and hydraulic cart, the court rejected Debtor's contention that they were leased and had been returned to the lessor. The court also rejected Debtor's contention that the ice machine belonged to his son. The court also heard testimony as to certain unspecified tools and equipment and rejected Debtor's contention that the tools and equipment belonged to him, individually, and not to U.S. Jets.[8] The court found that Debtor had willfully failed to comply with the court's prior order to produce this property for inspection and that Debtor was in willful contempt

---

[7] Plaintiffs acknowledge this in footnote 4 of their motion.

[8] Since Boyd held a security interest in property of U.S. Jets, the obligor and grantor on the note and security agreement assigned to Boyd by AFB&T, if the tools and equipment belonged to Debtor, they would not be collateral of Boyd and subject to inspection and production in the state court proceedings.

16

because of his actions in disposing of and selling property without first ascertaining from the court that the disposition and sale of property was appropriate.

It is undisputed that none of the property addressed by the state court in the Contempt Order has been delivered to Boyd. The state court heard testimony from Debtor as to the whereabouts of this property, found that Debtor had disposed of the property and rejected all of Debtor's explanations and justifications for such dispositions. The Court specifically found that the property was Boyd's collateral. These issues were actually litigated and were necessary for the court's finding of contempt.

The Eleventh Circuit has held:

> Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights.

Wolfson v. Equine Capital Corp., 56 F.3d 52, 54 (11th Cir. 1995). In the Contempt Order, the state court found that Debtor had intentionally, and without justification, disposed of Boyd's collateral. The Contempt Order is entitled to collateral estoppel effect with respect to Boyd's claim for damages. Accordingly, Boyd is entitled to summary judgment on his claim for damages under 11 U.S.C. § 523(a)(6).

However, as to damages, no evidence has been submitted[9] and the Contempt Order makes no finding. Further, the Contempt Order does not specify which tools and equipment were sold by Debtor. Accordingly, the Court cannot enter judgment for the amount of damages at this time.

---

[9] See footnote 7, supra.

17

In conclusion, summary judgment on Plaintiffs' claims under 11 U.S.C. § 727(a) for denial of discharge is denied. Summary judgment is granted with respect to Plaintiffs' claims under 11 U.S.C. § 523(a)(6). However, as to the issue of damages, summary judgment is denied.

The Court will enter a separate order consistent with this opinion. The Court will also enter a separate order scheduling a status conference in this adversary proceeding to discuss further proceedings herein.